**ROBERT J. WALSH, ESQ.**
Nevada Bar No.: 003836
**THE WALSH FIRM, LTD.**
500 N. Rainbow Blvd., Ste. 115
Las Vegas, NV 89107
Phone: (702) 474-4660
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REMEMBER RELATIONSHIPS MATTER, INC., a Nevada corporation, dba DCAP ERC;<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS WESLEYAN UNIVERSITY, a foreign entity; DOE INDIVIDUALS I-X, inclusive; and ROE ENTITIES I-X, inclusive,<br><br>Defendant. | CASE NO.: 2:26-cv-02950-GMN-BNW<br><br>**STIPULATION AND ORDER FOR LEAVE TO FILE AMENDED COMPLAINT** |

**IT IS HEREBY STIPULATED AND AGREED** by and between Plaintiff, REMEMBER RELATIONSHIPS MATTER, INC., a Nevada corporation dba DCAP ERC ("Plaintiff"), by and through their attorney of record, ROBERT J. WALSH, ESQ., of THE WALSH FIRM, LTD. and Defendant, ILLINOIS WESLEYAN UNIVERSITY, a foreign entity ("Defendant"), by and through their attorney of record, J. Christopher Jorgensen, Esq. of

. . .

. . .

. . .

. . .



*THE WALSH FIRM, LTD.*
*500 N. Rainbow Blvd, Ste. 115*
*Las Vegas, NV 89107*
*(702) 474-4660*

WOMBLE BOND DICKINSON (US) LLP, that Plaintiff be allowed to file an Amended Complaint, a copy of which is attached hereto as Exhibit "1".

DATED: this 20th day of October, 2026.

**THE WALSH FIRM, LTD.**

*/s/ Robert J. Walsh*
**ROBERT J. WALSH, ESQ.**
Nevada Bar No.: 003836
500 N. Rainbow Blvd., Ste. 115
Las Vegas, Nevada 89107

**GARMAN TURNER GORDON LLP**

*/s/ Erika Pike Turner*
**ERIKA PIKE TURNER, ESQ.**
Nevada Bar No. 006454
MARGARITA ELIAS, ESQ.
Nevada Bar No. 14867
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

*Attorney for Plaintiff*

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ J. Christopher Jorgensen*
**J. CHRISTOPHER JORGENSEN, ESQ.**
Nevada Bar No.: 005382
8848 Rozita Lee Avenue, Ste. 400
Las Vegas, Nevada 89113

*Attorneys for Defendant*

**ORDER**

The Court, having reviewed the stipulation of the parties and good causing appearing therefore:

**IT IS HEREBY ORDERED** that Plaintiff shall file the Amended Complaint as attached as Exhibit "1".

UNITED STATES MAGISTRATE JUDGE

DATED: October 22, 2026



*THE WALSH FIRM, LTD.*
*500 N. Rainbow Blvd, Ste. 115*
*Las Vegas, NV 89107*
*(702) 474-4660*

# EXHIBIT 1

EXHIBIT 1

**ROBERT J. WALSH, ESQ.**
Nevada Bar No.: 003836
**THE WALSH FIRM, LTD.**
500 N. Rainbow Blvd., Ste. 115
Las Vegas, NV 89107
Phone: (702) 474-4660
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| REMEMBER RELATIONSHIPS MATTER, INC., a Nevada corporation, dba DCAP ERC;<br><br>Plaintiff,<br><br>vs.<br><br>ILLINOIS WESLEYAN UNIVERSITY, a foreign entity; DOE INDIVIDUALS I-X, inclusive; and ROE ENTITIES I-X, inclusive,<br><br>Defendant. | ) | CASE NO.: 2:26-cv-02950<br><br>**AMENDED COMPLAINT** |

Plaintiff, Remember Relationships Matter, Inc., a Nevada corporation, dba DCAP ERC, by and through its attorney, ROBERT J. WALSH, ESQ., of THE WALSH FIRM, LTD., for causes of action against the named Defendant, ILLINOIS WESLEYAN UNIVERSITY, a foreign entity, hereby alleges, complains and avers, as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff, Remember Relationships Matter, Inc., dba DCAP ERC (hereinafter referred to as "DCAP" or "Plaintiff"), has been, at all times relevant to this action, a Nevada corporation, qualified and conducting business in the County of Clark, State of Nevada.
2. Upon information and belief, Defendant, ILLINOIS WESLEYAN UNIVERSITY (hereinafter referred to as "IWU" or "Defendant"), is a foreign entity, licensed, qualified



*THE WALSH FIRM, LTD.*
*500 N. Rainbow Blvd, Ste. 115*
*Las Vegas, NV 89107*
*(702) 474-4660*

and conducting business in the State of Illinois.

3. That the true names and capacities, whether individual, corporate, associate or otherwise, Defendant(s), DOE INDIVIDUALS I - X and ROE CORPORATIONS I - X, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names; Plaintiff is informed and believes and thereupon alleges that each of the Defendant(s) designated herein as a DOE or ROE is responsible in some manner for the events and happenings referred to and caused damage(s) to Plaintiff as alleged herein and that Plaintiff will seek leave of this Court to amend this complaint and insert the true names and capacities when the same have been ascertained and enjoin such defendants in this action.

4. The court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00 and the parties are diverse to one another.

5. The court has personal jurisdiction over IWU and this court located in Clark County, Nevada is a proper venue pursuant to 28 U.S.C. § 1391. The parties executed a written Client Services Agreement (the "Agreement," attached hereto as Exhibit 1) subject of this civil action, which contains the parties' express agreement that the Agreement shall be governed by the laws of the State of Nevada and venue shall solely lie in Clark County, Nevada. See the Agreement, § 8(E). Additionally, DCAP is located in Clark County, Nevada and its damage that is subject of this civil action was suffered in Clark County, Nevada.

...

...

THE WALSH FIRM, LTD.
500 N. Rainbow Blvd, Ste. 115
Las Vegas, NV 89107
(702) 474-4660

## STATEMENT OF FACTS

6. On or about October 16, 2023, DCAP and IWU entered into the Agreement, pursuant to which DCAP agreed to provide services relating to IWU's Employee Retention Credit ("ERC") claims, including assistance with ERC qualification, processing payroll data, calculating qualified wages and compensation, and assisting with amended 941-X filings.
7. Pursuant to the Agreement, DCAP was authorized to utilize processing affiliates and independent professionals, including licensed certified public accountants, in connection with the preparation, filing, and administration of IWU's ERC claims.
8. In accordance with the Agreement, the amended payroll tax returns submitted to the Internal Revenue Service on IWU's behalf were prepared and filed by, or under the supervision of, a licensed certified public accountant operating under his own credentials and IRS-issued Preparer Tax Identification Number ("PTIN").
9. Pursuant to Section 6(A) of the subject Agreement, in exchange for the services provided by DCAP, IWU agreed to pay DCAP a contingency fee equal to twenty percent (20%) of the total Employee Retention Credit refunds issued by the Internal Revenue Service, due and payable within ten (10) business days upon receipt of funds.
10. The Internal Revenue Service approved IWU's ERC claims and issued ERC refund payments to IWU for the applicable 2021 quarters.
11. IWU received ERC refund payments for the applicable quarters in 2021 as follows: $3,617,789.98 for Q1, $3,406,242.45 for Q2, and $2,614,906.70 for Q3.
12. The ERC refund payments issued by the Internal Revenue Service to IWU totaled $9,638,939.13, inclusive of statutory interest paid in connection with those refunds.
13. Pursuant to Section 6(A) of the Agreement, DCAP is entitled to a contingency fee equal

THE WALSH FIRM, LTD.
500 N. Rainbow Blvd, Ste. 115
Las Vegas, NV 89107
(702) 474-4660

to twenty percent (20%) of the total ERC refunds issued by the Internal Revenue Service, including any statutory interest paid to IWU in connection with those refunds.

14. Based on the total ERC refund payments issued by the Internal Revenue Service, DCAP is owed a contingency fee under the Agreement of $1,927,787.83.

15. IWU accepted the benefits of DCAP's performance under the Agreement and received the ERC refunds generated through the services performed pursuant to said Agreement.

16. IWU made partial payments to DCAP pursuant to the Agreement following receipt of the ERC refunds.

17. IWU continued making payments under the Agreement after becoming aware of the issues it now asserts as a basis to dispute additional amounts due and owing.

18. IWU has paid a portion of the contingency fee due under the Agreement, but has refused and continues to refuse to pay the remaining amounts due and owing DCAP.

19. A dispute has arisen between the parties concerning whether statutory interest paid by the Internal Revenue Service in connection with the ERC refunds is included within the phrase " (...total ERC credit refunds issued by the IRS…)" used in the Agreement.

20. DCAP contends that such statutory interest is included within the contingency fee calculation under the Agreement, while IWU contends that it is not.

21. Despite numerous demands, IWU has failed and refused to pay the remaining amounts DCAP contends are due and owing under the Agreement.

22. As a result of IWU's failure and refusal to pay the remaining amounts due, DCAP has been damaged.

23. DCAP has incurred attorneys' fees and costs as a result of IWU's refusal to pay the remaining amounts due under the Agreement.

THE WALSH FIRM, LTD.
500 N. Rainbow Blvd, Ste. 115
Las Vegas, NV 89107
(702) 474-4660

**FIRST CAUSE OF ACTION**
**(*Breach of Contract*)**

24. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

25. At all times relevant hereto, a valid and binding written agreement existed between Plaintiff and Defendant.

26. Plaintiff fully performed its obligations under the Agreement, including providing services relating to Defendant's ERC claims, which resulted in Defendant's receipt of substantial ERC refunds issued by the Internal Revenue Service for the benefit of the Defendant.

27. Pursuant to the Agreement, Defendant agreed to pay Plaintiff a contingency fee equal to twenty percent (20%) of "the total ERC credit refunds issued by the Internal Revenue Service."

28. Defendant received ERC credit refunds, accepted the benefits of Plaintiff's performance, made substantial payments pursuant to the Agreement, and thereafter failed and refused to remit the full amounts due and owing Plaintiff.

29. An actual and justiciable controversy has arisen between Plaintiff and Defendant concerning whether the phrase "total ERC credit refunds issued by the Internal Revenue Service" encompasses all ERC-related amounts issued by the Internal Revenue Service, including statutory interest paid in connection with the refunds.

30. The parties assert materially adverse positions concerning their respective rights and obligations under the Agreement and the amount, if any, remaining due and owing to Plaintiff thereunder.

THE WALSH FIRM, LTD.
500 N. Rainbow Blvd, Ste. 115
Las Vegas, NV 89107
(702) 474-4660

31. The controversy is definite and concrete, affects the legal rights and obligations of the parties, and is ripe for judicial determination.

32. Plaintiff seeks a judicial declaration determining the parties' respective rights and obligations under the Agreement, including a declaration that the amounts at issue are recoverable under the Agreement and that Defendant is obligated to pay all sums determined to be due thereunder.

33. Plaintiff alleges that by failing and refusing to pay the full amounts due under the Agreement within ten (10) business days upon receipt of funds from the IRS, Defendant materially breached the Agreement.

34. As a direct and proximate result of Defendant's breach, Plaintiff is entitled to an award of damages in an amount exceeding $75,000.00.

35. Pursuant to the Agreement and applicable law, Plaintiff is entitled to recover its damages, pre-judgment interest from the date of breach, post-judgment interest, attorneys' fees, costs of suit and expenses incurred, and such other relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

1. For an award of compensatory damages;
2. For a declaration determining the parties' respective rights and obligations under the Agreement, including a declaration concerning the proper interpretation and application of Section 6(A) thereof;
3. For an award of pre-judgment and post-judgment interest as allowed by the Agreement, 18% per annum pursuant to Section 7(B), and applicable law;

THE WALSH FIRM, LTD.
500 N. Rainbow Blvd, Ste. 115
Las Vegas, NV 89107
(702) 474-4660

4. For an award of attorneys' fees, costs, and expenses of litigation pursuant to Section 7(A) of the Agreement and applicable law;
5. For such other and further relief as the Court deems just and proper.

DATED: this ______________ day of October, 2026.

**THE WALSH FIRM, LTD.**

*/s/ Robert J. Walsh*
**ROBERT J. WALSH, ESQ.**
Nevada Bar No.: 003836
500 N. Rainbow Blvd., Ste. 115
Las Vegas, Nevada 89107
*Attorney for Plaintiff*

*THE WALSH FIRM, LTD.*
*500 N. Rainbow Blvd, Ste. 115*
*Las Vegas, NV 89107*
*(702) 474-4660*

# EXHIBIT 1

EXHIBIT 1

DCAP | ERC

# CLIENT SERVICES AGREEMENT

This Client Services Agreement (the "Agreement") is dated as of 10/16/2023 (the "Effective Date") between Remember Relationships Matter, LLC dba DCAP ERC, with a place of business at PO Box 370383, Las Vegas, NV 89137-0383 ( "DCAP ERC") and Illinois Wesleyan University ("Client"). Client and DCAP ERC are each individually referred to herein as a "Party" and collectively as the "Parties."

## 1. SCOPE OF ENGAGEMENT; SERVICES.

Client wishes to engage DCAP ERC to perform the following services and DCAP ERC agrees to perform the following services (the "Services") pursuant to the terms of this Agreement:

A. Provide a qualification document that enables client to self-validate eligibility for the Employee Retention Tax Credits ("ERC"). Client signs off on Qualification Report through DocuSign.

B. Process Client payroll data to compute and calculate wage attribution, as defined in section 3121(a) of the Internal Revenue Code ("Code") and compensation as defined in section 3231(e) of the Code and as otherwise required by statute or regulation (collectively "Qualified Wages").

C. To the extent required, assist client with gathering applicable information (i.e. payroll data, paid time off, healthcare costs, gross receipts data, etc.) to provide estimates and calculate credits; and

D. Prepare and file amended 941-X tax returns and mail the same to the IRS for processing.

## 2. CLIENT RESPONSIBILITIES

For the Term of this Agreement, the Client grants DCAP ERC reasonably limited access to any information and data necessary to perform the Services (the "Client Data"). Any and all Client Data provided to DCAP ERC shall be deemed confidential information. Specifically, Client to provide DCAP ERC with the following data within **ten (10) business days** of execution hereof:

A. Payroll journal reports exported from Client's payroll provider from January 2019 through present (preferred format: CSV or Excel).

B. Responses to "Client ERC Questionnaire".

C. Client Quarterly 941 Tax Filings for 2020 and 2021, when available

D. Client agrees to submit a signed IRS Form 2848 (Power of Attorney and Declaration of Representative) to DCAP ERC, allowing DCAP ERC to monitor the ERTC process on behalf of Client.

DCAP | ERC

E. Client agrees that all information and documents sent to DCAP ERC are factual and accurate. DCAP ERC is basing calculations and qualification reports only on documents that are given to DCAP ERC directly from the Client. Shall the given information and documents from the Client are incorrect, DCAP ERC will not be held liable.

**3. AID-PREPARER SERVICES; PROCESSING AFFILIATE**

A. *Paid Preparer*. DCAP ERC shall be considered and will be listed as a Federal Tax Return Preparer ("Paid Preparer") for the amended 941 filings and will, accordingly, have limited representation rights before the IRS on behalf of the Client. Accordingly, DCAP ERC has and will maintain a valid PTIN with the IRS, which will be included in the Paid Preparer section on the amended 941-X. DCAP ERC relies on Client answers and attestations in the Client Questionnaire with regard to the eligibility for ERC credits.

B. *Use of Processing Affiliate.* DCAP ERC may, at its sole and unilateral option, pay all costs, and expenses, subcontract preparation, filing or any audit defense of the 941-X to an attorney, CPA, enrolled agent, or other paid preparer authorized to conduct business before the IRS ("Processing Affiliate"). All work completed, whether by DCAP ERC or a Processing Affiliate, shall be in a form and format acceptable to the IRS.

C. *Errors; Rejection by IRS.* In the event the amended tax returns are rejected because of errors or defects, then correction services and resubmission of the application shall be provided by DCAP ERC without additional charge to the Client.

A. *Wet Signature*. Client hereby authorizes DCAP ERC to send electronically; completed amended 941-Xs for Client to print out and sign on page 5 with a wet signature. Client may deliver scanned copies of the signed pages to DCAP ERC via email. DCAP ERC will mail amended 941-Xs to the IRS promptly upon receipt of a scanned copy of Client's wet ink signature.

**4. GUARANTEE & WARRANTY**

A. *Calculations.* The calculations and accompanying schedules will be prepared in a professional manner, compliant with applicable statutes and program regulations, and free of any material errors or material defects. DCAP ERC does not warrant and is not responsible for any Services to the extent that the Services incorporate work performed substantially by Client or to the extent that the Services involve work that has not been completed and reviewed by DCAP ERC.

**B.** *Workmanship.* All work shall be in a form and format acceptable to the IRS. In the event the returns are rejected because of errors or defects, correction services and resubmission of the application shall be provided by DCAP ERC without additional charge to Client.

**C.** *Audit & Interest & Penalty Guarantee.* In the event Client is assessed a penalty by the IRS as a result of a negligent miscalculation by DCAP ERC, DCAP ERC will reimburse Client for such interest and penalty, provided, however, that such reimbursement shall not exceed the total fees paid to DCAP ERC under this agreement for a time period equal to 3 years from the date of the ERC filing.

**D.** *No Guaranteed Refund.* For the sake of clarity and avoidance of all doubt, DCAP ERC does not guarantee any specific refund amount before receiving Client data (for the sake of clarity, the refund must be computed by processing Client's payroll journals), and no unconditional guarantees of refunds have been by DCAP ERC to the Client made whatsoever.

**5. TAX YEARS**

Tax Years this engagement letter shall cover ERC credits for the calendar years 2020 and 2021, to the extent such credits are available to Client in either of those years. In the event future legislation authorizes ERC for any quarter in 2022, and Client is eligible for 2022, this Agreement shall similarly cover 2022.

**6. ENGAGEMENT PRICING**

A. *Contingency Fee.* Client agrees to pay DCAP ERC 20% of the total ERC credit refunds issued by the IRS, due and payable within ten (10) business days upon receipt of funds from the IRS.

B. *Client Ineligible for ERC.* In the event Client is deemed not eligible for ERC tax credits by the IRS or DCAP ERC, any monies paid hereunder shall be returned to Client within five (5) business days, whereupon the Parties shall have no further obligations to each other whatsoever.

C. *Client Withdrawal.*

I. *Actual Termination.* Client may terminate this Agreement prior to DCAP ERC preparing the amended 941-X returns ("Client Termination") by providing written notice to DCAP ERC.

I. *Constructive Termination; Failure to Provide Documentation Upon Demand.* Client shall be deemed in breach of this Agreement if Client fails to provide DCAP ERC with its payroll data and 941 returns within ten (10) business days after receiving request by DCAP ERC. In the event Client fails to cure the breach within five (5) business days after receiving written notice of breach from DCAP ERC, DCAP ERC shall be entitled to invoice any Contingency Fee for any filed tax returns under this agreement for prior quarters, which shall become immediately due and payable.

II. In the event there is a Client withdrawal, yet Client (either directly or through a third party) subsequently files for ERC, DCAP ERC shall be entitled to the fees set forth in the Agreement as if Client has not withdrawn.

D. *Fees Contingent*. For the sake of clarity and avoidance of all doubt, all money paid by Client under this Engagement Letter are contingent on Client receiving a tax refund from the IRS. Should the IRS deny the claim for any reason whatsoever, or should Client be deemed ineligible for ERC tax credits, all moneys paid shall be returned to Client within 5 (five) business days, whereupon the Parties shall have no further obligations whatsoever.

E. *Payment of Fees*. Fees are to be paid by Check, ACH, or wire transfer.

F. Client hereby irrevocably agrees that it will not, directly or indirectly, interfere with, circumvent, attempt to circumvent, avoid, or bypass compensation owed to DCAP ERC for services provided under this Agreement.

**7. PAYMENT DEFAULT**

A. *Collection Costs*. In the event a legal action, demand, or other proceeding is commenced to collect any Contingency Fee due hereunder, DCAP ERC shall be entitled to recovery of reasonable attorneys' fees, costs, and expenses.

B. *Interest on Past Due Balances*. Interest shall accrue on all past-due balances at 18% (eighteen percent) per annum.

DCAP | ERC

**8. LIMITATIONS OF LIABILITY; MISCELLANEOUS**

A. *Brokers*. To the extent any broker, agent, or referral partner is involved in this sale: (a) Client agrees not to make any claims or demands against such broker, agent, or referral partner; and (b) such broker, agent, or referral partner's role is mutually agrees as making introductions only, and not offering any professional advice regarding ERC tax credits. Broker or agent is only entitled to compensation from DCAP ERC as set forth in a written referral agreement between DCAP ERC and broker/agent, if any. Unless a Referral Partner is explicitly provided by Client in writing on the signature page hereof, Client warrants that it has not been introduced to DCAP ERC by any Referral Partner.

B. *Limitation of Liability*. In no event and under no legal theory, whether in tort (including negligence), contract, or otherwise, unless required by applicable law (such as deliberate and grossly negligent acts) or agreed to in writing, shall DCAP ERC or any of its members, officers, directors, employees, successors, partners, or assigns be liable to Client for damages, including any direct, indirect, special, incidental, or consequential damages of any character arising as a result of this Agreement, even if DCAP ERC or any of its members, officers, directors, employees, successors, partners, or assigns has been advised of the possibility of such damages.

C. *Assignment*. DCAP ERC may assign its Contingency Fee due under this Agreement to any third party by providing written notice to Client. Client shall execute an acknowledgment of Assignment or other commercially reasonable document affirming the amounts of the Contingency Fee owed as required by any financing body or investor of DCAP ERC.

D. *Amendment*. This Agreement may be amended in a writing signed by both Parties.

E. *Governing Law and Venue*. This Agreement constitutes the entire agreement between the Parties and shall be governed by the laws of the State of Nevada and venue shall solely lie in Clark County, Nevada.

F. *Severability*. If any clauses or provisions herein contained operate or would prospectively operate to invalidate this agreement, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this agreement shall remain operative and in full force and effect.

A. Client understands and agrees:

I. That DCAP ERC has not provided and will not provide to Client legal advice or opinions of any nature, nor tax advice other than the limited scope regarding ERC and amending of Client's 941;

II. That Client has been encouraged to obtain such legal advice and opinion from an attorney or attorneys of Client's choice;

III. That Client has either obtained such advice and/or opinion as part of Client's due diligence or has decided independently not to do so;

IV. The Services will not include verification or constitute a formal review or audit in accordance with any applicable accounting standards;

V. That Client is not relying on any statement made to Client by DCAP ERC regarding whether Client will qualify for an ERC or the amount of any such ERC. Client may rely on the Qualification report but understands the IRS may disagree;

VI. That it is not the responsibility of DCAP ERC to perform any other accounting services other than those specifically set forth herein;

VII. That DCAP ERC engagement shall not constitute an audit, examination, review of any kind, compilation, or compilation of agreed-upon procedures as defined by the AICPA, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC, or other state or national professional or regulatory body. The management of the Client is responsible for any and all financial information prepared during the course of this engagement. Accordingly, as part of this engagement, DCAP ERC will not express an opinion or other form of assurance on the financial statements or financial components of the Client; and

VIII. That while DCAP ERC is informed and believes that the ERC is a valid and viable program offered by the Internal Revenue Service ("IRS") (see https://www.irs.gov/coronavirus/employee-retention-credit), DCAP ERC makes no representations or warranties regarding:

a. whether any person entity for whom DCAP ERC prepares and/or submits an application for ERC will ultimately qualify for such credit,

b. whether the IRS will or will not audit Client with respect to Client's application for ERC, and

c. whether, if audited, the IRS will or will not disallow all or part of the

Client's ERC (including possibly assessing interest and penalties on any disallowed amount ("IRS Assessment")). Client specifically and expressly waives any claim, demand, or liability as against DCAP ERC (and each of its owners, officers, managers, employees, agents, associates, and affiliates) regarding any IRS Assessment.

DCAP | ERC

## SIGNATURE PAGE TO CLIENT SERVICES AGREEMENT

**IN WITNESS HEREOF, the Parties have executed this Agreement as of the Effective date above.**

**Client:**

DocuSigned by:
Jake Emery
297293C216F047A...

By: Jake Emery

Title: Controller

Date: 10/16/2023

**DCAP ERC:**

DocuSigned by:
51BCA02C61F64AB...

By: Mark Valenti

Title: President

Date: 10/18/2023

**Referral Partner or Broker (if any):**

John Reighard